WILLM v. DEDMAN.

Opinion delivered January 31, 1927.

1. VENDOR AND PURCHASER—EXECUTORY CONTRACT.—Under an executory contract for the sale of lands to B with privilege to resell tracts of not less than 40 acres upon payment of the price to the vendor, no legal title passed to B, and one purchasing from B acquired only such rights as B had.

2. ADVERSE POSSESSION—PAYMENT OF TAXES—COLOR OF TITLE.—Under Crawford & Moses' Dig., § 6943, investing with title one who, with color of title, pays taxes on unimproved and uninclosed land for seven years in succession, held that a contract for the purchase of land does not constitute color of title.

3. VENDOR AND PURCHASER—LIMITATION OF ACTION.—Where the acquisition of title to land depended on payment of the purchase money, a purchaser in possession who has failed to pay the purchase money cannot acquire title upon the ground that the debt was barred by the statute of limitations.

4. VENDOR AND PURCHASER—LIABILITY OF SUBVENDEE.—Where land was purchased subject to the payment of a certain amount per acre, the vendor's assignee is not entitled to a personal judgment against a subvendee, but only to a lien on the land for the purchase money.

5. VENDOR AND PURCHASER—LIEN FOR PURCHASE MONEY.—Land sold subject to the payment of a certain amount per acre is subject to a lien for that amount in favor of one purchasing the contract rights of the vendor, regardless of the price paid to the vendor therefor.

Appeal from Cleveland Chancery Court; *H. R. Lucas,* Chancellor; judgment modified.

*George Brown,* for appellant.

*Woodson Mosley,* for appellee.

HUMPHREYS, J.    Appellee instituted suit against appellant in the chancery court of Cleveland County to cancel a deed from the Western Land Company to said appellant, of date June 13, 1918, for the north half of the northwest quarter section 9, township 9 south, range 10 west, in said county, upon the alleged ground that same constituted a cloud upon appellee's title to said land. Appellee alleged ownership of said tract of land through mesne conveyances from the United States, his immediate grantor being the J. I. Porter Lumber Com-

pany, from whom he purchased it, with other lands, on June 27, 1923; that said land was and had always been wild and unoccupied, and that his grantors had paid the taxes thereon for more than twenty-five years under color of title.

Appellant filed an answer to the complaint, admitting that the J. I. Porter Lumber Company acquired title to said tract of land through mesne conveyances from the United States, but denying that appellee acquired any title thereto by the deed which said company executed to him June 27, 1923, alleging that, prior to the execution of said deed, the J. I. Porter Lumber Company had conveyed the tract of land to Tom Blodgett; that Tom Blodgett conveyed same to the Western Land Company, from whom he (appellant) acquired it by purchase on June 13, 1918; also admitting that said land was and had always been wild and unoccupied, but denying that the grantors of appellee had paid the taxes thereon under color of title for more than twenty-five years, and pleaded the further defenses of estoppel, laches and the payment of taxes for more than seven years under color of title.

The cause was submitted to the court upon the pleadings, exhibits thereto, and the testimony introduced by the parties, which resulted in a denial of the cancellation of appellant's deed, but, instead, the rendition of a personal judgment in favor of appellee against appellant for $694 and a decree for a lien and the enforcement thereof against said land by sale, if said amount was not paid by appellant.

An appeal has been duly prosecuted to this court by appellant from the decree in so far as same is adverse to him.

The evidence in the case is undisputed. Each party traces his title back to the J. I. Porter Lumber Company. On September 15, 1913, the J. I. Porter Lumber Company entered into a written contract for the sale and purchase of a large body of land in said county, including this tract, to Tom Blodgett, for a total consideration of $91,800 to be paid in installments at stated periods.

The contract contained a provision allowing Blodgett to sell the lands in tracts of not less than forty acres, in which event it agreed to make a contract or deed direct to the purchaser upon payment to it of $6.75 per acre in cash, or to accept one-half of said amount in cash and to retain a vendor's lien, or to take a first mortgage on the tracts sold for the other half of said amount.

On the 20th day of October, 1913, Blodgett conveyed said lands by warranty deed to the Western Land Company, a corporation, of which he was president. The deed contained the following recital: "My entire interest in all the lands purchased by me from the J. I. Porter Lumber Company on the 15th day of September, 1913, as described in the contract of that date signed by the J. I. Porter Lumber Company, by J. I. Porter, its president, and J. F. Swanson, treasurer, and by the undersigned, Tom Blodgett, being thirteen thousand and six hundred acres, more or less."

In the year 1914 the Western Land Company contracted to sell the eighty-acre tract of land in question to appellant for $2,000. Appellant paid it $400 of the consideration at the time the contract was executed.

On the 13th day of June, 1918, the Western Land Company executed a warranty deed for said eighty-acre tract of land to appellant upon the payment to it of $1,600, the balance of the consideration. Appellant paid the taxes on said eighty-acre tract of land from the date of his contract in 1914, to and including the year 1923.

The contract from the J. I. Porter Lumber Company to Blodgett was filed for record September 6, 1917. The deed from Blodgett to the Western Land Company was filed for record October 20, 1913. The deed from the Western Land Company to appellant was filed for record on June 13, 1918, the day it was executed.

On June 27, 1923, the J. I. Porter Lumber Company made a deed for a large body of land, including the eighty-acre tract in question, to appellee for $40,300, $30,000 of which amount was paid in cash. Said deed was recorded on the 16th day of July, 1923. At the time of

this conveyance neither the grantor nor the grantee knew of the existence of the deed from the Western Land Company to appellant. Both appellant and appellee had constructive notice, however, of the contracts and deeds of record relating to the eighty-acre tract in question.

After the Western Land Company executed the deed for said eighty-acre tract to appellant, and before the J. I. Porter Lumber Company executed the deed for said eighty-acre tract to appellee, the J. I. Porter Lumber Company filed a suit and obtained a judgment canceling its contract with Blodgett because he failed to make the payments provided for therein.

Appellant contends for a reversal of the decree on the alleged ground that the instrument executed by the J. I. Porter Lumber Company to Blodgett on September 15, 1913, is either a conveyance or else a contract of agency to sell said eighty-acre tract of land. His learned counsel argues that if it is a conveyance then appellee is estopped by a deed of record prior in time and paramount to the deed under which he claims; and, if it is a contract of agency to sell land, then appellee is estopped because he had constructive knowledge of said contract, which had been duly recorded before he purchased the land. The answer to both arguments is that the instrument is neither a conveyance nor a contract of agency to sell land coupled with interest. On the contrary, the instrument is an executory contract for the sale and purchase of land to Blodgett or his assigns, with the privilege to resell in tracts of not less than forty acres upon payment of $6.75 per acre to the J. I. Porter Lumber Company. No legal title passed whatever by the instrument to Blodgett. It is specifically provided in the contract that, in case of resale in small tracts and the payment of $6.75 per acre to the J. I. Porter Lumber Company, said company will execute a deed for the tract sold to the purchaser thereof. All the rights acquired by appellant under his deed from the Western Land Company, of date June 13, 1918, were such rights as it acquired from Blodgett. These rights were accorded to him by the decree rendered in this case.

Appellant also contends for a reversal of the decree because he paid taxes on the eighty-acre tract of land more than seven years under color of title. His 1913 contract for the purchase of the land did not constitute color of title. His deed of date June 13, 1918, constituted his first color of title, and at the time this suit was instituted he had not paid the taxes for seven years under his deed.

Appellant also contends for a reversal of the decree because the debt of $6.75 per acre was barred by the statute of limitations, not having been paid within five years after maturity. The acquisition of appellant's title depended upon the payment of the purchase money, and until he pays the purchase money he cannot acquire the title. The statute of limitations has no application to this character of contracts, so far as the payment of the purchase money is concerned.

Appellant also contends for a reversal of the decree because the court rendered a money judgment against him. This was error. Appellant did not contract to pay the J. I. Porter Lumber Company, or its grantee, $6.75 per acre for the eighty-acre tract. He simply purchased it subject to the payment of that amount per acre. A lien for the amount on the eighty-acre tract of land is all appellee is entitled to.

Lastly, appellant contends that the lien on the land should be reduced to $462.40 because appellee only paid $5.78 per acre for it to the J. I. Porter Lumber Company. This was a matter between the J. I. Porter Lumber Company and appellee, and was of no concern to appellant. Appellee had the right to buy the contractual rights of the J. I. Porter Lumber Company, under the contract as made with Blodgett, as cheaply as he could get them, and it was the privilege of the J. I. Porter Lumber Company to sell such rights at its own price.

The decree is therefore modified by reversing the money judgment rendered against appellant, and, as modified, is affirmed.